JOSEPH L. BARLOON (*pro hac vice*)
joseph.barloon@skadden.com
ANAND S. RAMAN (*pro hac vice*)
anand.raman@skadden.com
JOHN A.J. BARKMEYER (*pro hac vice*)
john.barkmeyer@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1440 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 371-7000
Facsimile: (202) 393-5760

ALLEN J. RUBY (SBN 47109)
allen.ruby@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile: (650) 470-4570

Attorneys for Defendant
FREEDOM DEBT RELIEF, LLC

CRISTINA C. ARGUEDAS (SBN 87787)
arguedas@achlaw.com
RAPHAEL M. GOLDMAN (SBN 229261)
goldman@achlaw.com
ARGUEDAS, CASSMAN & HEADLEY LLP
803 Hearst Avenue
Berkeley, California 94710
Telephone: (510) 845-3000
Facsimile: (510) 845-3003

Attorneys for Defendant
ANDREW HOUSSER

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>v.<br><br>FREEDOM DEBT RELIEF, LLC and ANDREW HOUSSER,<br><br>Defendants. | CASE NO.: 3:17-cv-06484-EDL<br><br>(1) **DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY PROCEEDINGS**;<br><br>(Under separate cover)<br><br>(2) **[PROPOSED] ORDER**.<br><br>Judge: Hon. Elizabeth D. Laporte<br>Date: January 9, 2018<br>Time: 9:00 a.m.<br>Courtroom: E, 15th Floor |

DEFENDANTS' MOTION TO STAY PROCEEDINGS
Case No. 3:17-cv-06484-EDL

**DEFENDANTS' MOTION TO STAY PROCEEDINGS**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** PLEASE TAKE NOTICE THAT on January 9, 2018, at 9:00 a.m., or on the earliest date available for the Court, at the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom E, Fifteenth Floor, Defendants Freedom Debt Relief, LLC ("Freedom" or the "Company") and Andrew Housser will, and hereby do, move the Court for a stay of all proceedings in the above-captioned case pursuant to the Court's broad discretion in managing its dockets for the efficient use of its own and the parties' resources. This motion is based on the below memorandum of points and authorities, the files and records in this case, and any evidence or argument that may be presented at a hearing on this matter. It is made following the conference of counsel, which took place on December 8, 2017, and subsequent communications.

Defendants hereby move the Court to stay this litigation pending (1) resolution of a recently-filed lawsuit in Washington, D.C., contesting the authority of the Acting Director of Plaintiff, the Consumer Financial Protection Bureau (the "CFPB" or the "Bureau"), and (2) an anticipated review by the Bureau's Acting Director of all of the CFPB's recently filed litigation.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STAY PROCEEDINGS**

Defendants seek to stay this litigation due to extraordinary recent events at the CFPB that have created legal uncertainty and confusion.  The CFPB rushed to file this action against Freedom, in the midst of settlement discussions, on the eve of the departure of its former Director, Richard Cordray, who then left the agency in a manner that threw it into political turmoil.  Currently pending before the United States District Court for the District of Columbia is a lawsuit in which Leandra English, who claims to be Acting Director of the CFPB pursuant to Director Cordray's appointment, challenges the authority of John Michael Mulvaney, currently the Director of the Office of Management and Budget, who claims to be Acting Director of the CFPB pursuant to an appointment made by the President mere hours after Director Cordray appointed Ms. English.  *See English v. Trump*, No. 1:17-cv-02534-TJK (D.D.C. filed Nov. 26, 2017).

Neither the Court nor Defendants, sued by the Bureau at the eleventh hour before its change of leadership, should be forced to expend resources on this matter until a court determines who has the authority to act for the Bureau.  Moreover, given the unseemly haste and lack of warning with which the CFPB haled Defendants into court in the midst of settlement discussions—a transparent attempt to prevent Director Cordray's successor from assessing the merits of the claims now before the Court—a stay of litigation is necessary to allow the individual with legal authority over the Bureau to determine whether proceeding with this suit comports with the CFPB's policy and enforcement objectives.

**BACKGROUND**

Defendant Freedom is the nation's largest consumer debt settlement company.  Since its founding in 2002, it has settled consumer debts totaling more than $7 billion for more than 300,000 consumers.  Defendant Andrew Housser is the co-founder and co-CEO of Freedom.

A. **The CFPB's Investigation of Freedom**

In January 2017, under Director Cordray's leadership, the CFPB began an investigation of Freedom. This investigation focused principally on the practice of "client coaching," employed in a small percentage of cases in which Freedom determined that it was in the consumer's best interest to negotiate directly with their creditor.[1] In such cases, Freedom would "coach" its client on how to conduct the negotiation and by discussing reasonable settlement targets.

In response to two Civil Investigative Demands, Freedom produced voluminous information to the CFPB. In addition, based on a list of topics presented by the Bureau, Freedom appointed Mr. Housser to testify as a corporate representative at an investigative hearing (*i.e.*, administrative deposition) on July 26, 2017.

Shortly after that investigative hearing, with—as it later turned out—the end of Director Cordray's tenure approaching, the CFPB rushed the matter forward, denying Freedom and Mr. Housser a fair opportunity to respond to the Bureau's allegations. For example:

- Two days after Mr. Housser testified for Freedom, Bureau enforcement staff set a date in which it would set forth the CFPB's theories of potential liability on a telephone call (the "NORA Call"). Although 12 C.F.R. § 1080.9(a) provides that a witness who testifies before the CFPB is entitled to "30 calendar days" to review a transcript of the testimony before it becomes final, the CFPB rushed to conclusions before the record had even been finalized. To compound the unfairness, the Bureau also refused to extend Freedom's time to respond to the NORA Call to allow Freedom to review the transcript of the deposition.

- On the August 3, 2017 NORA call, the Bureau for the first time indicated that it intended to proceed against Mr. Housser. The CFPB gave no cogent explanation for its decision to proceed against Mr. Housser and refused to grant a request for a short extension of time to allow Mr. Housser an opportunity to retain counsel before responding.

---

[1] Freedom's more recent relationship with a law firm has all but obviated the need for client coaching today.

- After responding to the NORA allegations, up until the day the CFPB filed this suit, Freedom continued to cooperate with the Bureau by producing information in response to the Bureau's requests. Freedom also repeatedly requested to meet with the Bureau's enforcement staff in person to clarify its positions and answer the Bureau's questions in an attempt to achieve a resolution of the parties' dispute. The Bureau consistently rejected or put off every offer to meet with Freedom.

The CFPB's filing of the complaint was clearly motivated by Director Cordray's imminent departure, which was not publicly announced until November 15, 2017. There is no other explanation for the haste with which the CFPB filed suit against Freedom in the midst of what the Company considered were productive settlement discussions. The CFPB sent Freedom and Mr. Housser proposed tolling agreements on October 27 and 31, 2017, respectively—seemingly indicating its intention to continue settlement discussions. On November 1, 2017, the CFPB proposed an offer of settlement and asked for a counter-offer within two days. Freedom's counsel replied that Freedom would likely be unable to formulate a response so quickly, but both Freedom and Mr. Housser executed their tolling agreements as requested by the CFPB on November 3, indicating their own commitment to the ongoing settlement discussions, and Freedom provided additional information responsive to the Bureau's most recent request on November 7. On Wednesday, November 8, 2017, Freedom's counsel sent an email to the Bureau's enforcement staff to schedule a call to provide Freedom's response. About twenty minutes later, the enforcement staff called Freedom's counsel to reveal that the CFPB had already filed this suit.

B. **The CFPB's Change of Directorship**

The explanation for the CFPB's conduct in settlement negotiations became clear when, seven days after the Bureau filed this action, Director Cordray publicly announced that he would step down from his office by the end of November 2017.[2] On November

---

[2] Renae Merle, *Richard Cordray is stepping down as head of Consumer Financial Protection Bureau*, THE WASHINGTON POST (Nov. 15, 2017),
*(cont'd)*

24, 2017, Director Cordray tendered his resignation to President Trump.[3] In a separate letter to the Bureau's staff issued that same day, he announced that Ms. English, then his Chief of Staff, would serve as Acting Director upon his departure.[4] Shortly thereafter, President Trump announced his competing appointment of Director Mulvaney to the office of Acting Director.[5]

The competing claims led Ms. English to file her lawsuit on Sunday, November 26, 2017. *See* Complaint, *English* ECF No. 1. Ms. English sought a temporary restraining order preventing Director Mulvaney from exercising the powers of the CFPB's Acting Director. *See* Emergency Mot. for Temporary Restraining Order, *English* ECF No. 2. Meanwhile, both competing purported Acting Directors reported to work the following day, each issuing a communication asserting their authority over the CFPB.[6] The resulting "legal morass" continues to "engulf[]" the agency.[7]

Ms. English's lawsuit remains pending. On November 28, 2017, the court denied her motion for a temporary restraining order, but briefing and argument on Ms. English's request for a preliminary injunction barring Director Mulvaney from the office of Acting Director are still forthcoming, and the suit continues.

---

*(cont'd from previous page)*
https://www.washingtonpost.com/news/business/wp/2017/11/15/richard-cordray-is-stepping-down-as-head-of-consumer-financial-protection-bureau/?utm_term=.5372d45d22f8.

[3] Jackie Wattles, *Cordray resignation sets off scramble over Consumer Financial Protection Bureau*, CNN MONEY (Nov. 25, 2017, 10:02 a.m.), http://money.cnn.com/2017/11/24/news/cfpb-richard-cordray-resignation/index.html.

[4] *Id.*

[5] *Id.*

[6] Lorraine Woellert, *Confusion and chaos engulf consumer agency*, POLITICO (Nov. 27, 2017, 10:47 a.m.), https://www.politico.com/story/2017/11/27/consumer-financial-protection-bureau-fight-mulvaney-english-190862.

[7] *Id.*

# ARGUMENT

The Court can hardly expect the CFPB to litigate the case it has brought when its entire decision-making structure is in upheaval. Nor would the Court's and the parties' resources be well spent litigating issues that could soon be rendered moot by a shift in agency policy. A stay is therefore necessary until the fundamental threshold issue of the leadership of the Bureau is resolved in *English v. Trump*.

## I. Legal Standard

In determining whether to grant a motion requesting a stay, a district court has broad discretion to control its docket to promote "economy of time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936); *accord Clinton v. Jones*, 520 U.S. 681, 706–07 (1997). In considering whether to exercise that discretion, "the competing interests which will be affected by the granting or refusal to grant a stay must be weighed." *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1110 (9th Cir. 2005) (citing *CMAX Inc. v. Hall,* 300 F.2d 265, 268 (9th Cir. 1962)). The Court must balance (1) the possible damage that may result from a stay, (2) the hardship a party may suffer if required to proceed, and (3) the orderly course of justice, as determined by the simplifying or complicating of issues, proof, and questions of law that may result from a stay. *Id.*

"The moving party bears the burden of proving that a stay is warranted." *Dister v. Apple-Bay East, Inc.*, No. C 07–01377 SBA, 2007 WL 4045429, at *3 (N.D. Cal. Nov. 15, 2007). That party "must make out a clear case of hardship or inequity in being required to go forward." *Landis,* 299 U.S. at 255.

## II. Uncertainty Over the CFPB's Leadership Warrants a Stay

The Court should grant a stay in this case until the CFPB resolves, first, the open question of its leadership, and second, its policy determination as to whether to continue to prosecute this case under that new leadership.

This Court frequently grants motions to stay on the basis of the pending possibility of a change in law. For example, in *Larroque v. First Advantage LNS Screening*

*Solutions, Inc.*, No. 15-cv-04684-JSC, 2016 WL 39787, at *2 (N.D. Cal. Jan. 4, 2016), the Court granted a motion to stay proceedings where an unrelated action before the Supreme Court could have "deprive[d] Plaintiff of standing, eliminating the Court's jurisdiction over th[e] action." The Court similarly granted a stay for a determination of a fundamental question of a party's standing in a separate district court lawsuit in *Alzheimer's Institute of America v. Elan Corp.*, No. C–10–482–EDL, 2011 WL 6748634, at *2–7 (N.D. Cal. Dec. 22, 2011). In *PersonalWeb Technologies, LLC v. Apple Inc.*, 69 F. Supp. 3d 1022, 1027 (N.D. Cal. 2014), the Court granted a stay where "the landscape of the litigation could change dramatically in light of" a possible ruling from the Patent Trial and Appeal Board "and the parties should have the benefit of that change before making strategic choices for trial." Although it considered that the parties had "undertaken significant work on the case," it still deemed the stay appropriate where similarly significant work remained in discovery and key legal theories hinged on the potential administrative ruling. *Id.* at 1026–27. And in *Astiana v. Hain Celestial Grp., Inc.*, No. 11-cv-6342-PJH, 2015 WL 13333579, at *2 (N.D. Cal. Oct. 9, 2015), the Court granted a stay where "[c]hanges in the legal landscape" wrought by two pending appeals to the Ninth Circuit might have significantly altered parties' briefing and discovery obligations.

      Here, given the current dispute over the CFPB's leadership, the factors established in *Lockyer* all weigh in favor of granting a stay. First, there is a very low risk that issuance of a stay in this case would cause any damage at all. *See Lockyer*, 398 F.3d at 1110. The Bureau has only just filed its complaint, and that complaint does not seek immediate injunctive relief or otherwise evidence any threat of imminent harm. Indeed, Freedom's use of client coaching, the practice on which much of the complaint is based, is almost entirely historical. Nor would a stay threaten to interrupt significant progress in the litigation: there have been no substantive filings in this case beyond the complaint. The Court, as in *PersonalWeb Technologies*, has granted stays where parties have progressed much further in the litigation process than in this case. *See* 69 F. Supp. 3d at

1026–27. The Court's consideration here of "whether litigation has progressed significantly enough for a stay to be disfavored," *id.* at 1025, thus strongly advises that a stay is appropriate.

Second, all parties in this action would face hardship absent a stay. *See Lockyer*, 398 F.3d at 1110. By proceeding, Defendants and the Bureau would both risk wasting considerable time and resources litigating questions that, with a simple change of enforcement strategy, the new leadership of the CFPB could vitiate in minutes. It is for a very similar reason that the Court (as in *Larroque*, 2016 WL 39787, at *2, *Alzheimer's Institute of America*, 2011 WL 6748634, at *2–7, *PersonalWeb Technologies*, 69 F. Supp. 3d at 1027, and *Astiana*, 2015 WL 13333579, at *2) regularly grants stays where the terrain of the parties' dispute is subject to fundamental shift due to a potential change in law. The possibility of an equally fundamental change in Bureau policy suggests, by the same logic, that a stay is appropriate here.

Third, there can be no question that staying the action until it is clear who speaks for the CFPB would promote the "orderly course of justice," *Lockyer,* 398 F.3d at 1110, in the case it is prosecuting. Further, staying the case to permit the Bureau's new leadership to assess the merits of the litigation could greatly simplify the factual and legal questions before the Court. This is especially true given the Bureau's transparent haste to file this action prior to Director Cordray's departure. Any new leadership should be given a sufficient opportunity to review the results of the CFPB's investigation of Freedom and the information produced in settlement negotiations, and from that information should be allowed to reconsider—in an environment now free of political pressure to take action—whether this enforcement action is truly warranted, can be expeditiously settled, or requires that certain claims be dropped from the suit. Should the Acting Director decide that the action is necessary after all, the stay may be quickly lifted and proceedings may resume with no prejudice to either party.

Moreover, a stay of proceedings in this case would be consistent with the CFPB's treatment of its other cases during its current state of organizational disorder. On

1  November 27, 2017, the first business day on which both competing Acting Directors
2  claimed authority over the Bureau, Director Mulvaney announced that the CFPB would
3  freeze all new hiring and suspend all new regulations.[8]  The recent proceedings in two
4  ongoing CFPB cases reflect the Bureau's similarly equivocal attitude towards its pending
5  litigation.  In *CFPB v. Nationwide Biweekly Administration, Inc.*, No. 3:15-cv-02106-RS
6  (N.D. Cal. filed May 11, 2015), a separate action the CFPB is prosecuting before this
7  Court, defendants filed a motion to stay execution of a judgment pending resolution of
8  post-trial motions.  Mot. to Stay Execution of Judgment for Civil Penalties Pending Post-
9  Trial Motions, *Nationwide Biweekly* ECF No. 332.  The CFPB initially opposed that
10 motion on November 27, 2017.  *See* Opp'n/Response, *Nationwide Biweekly* ECF No. 337.
11 However, two days later, it withdrew that opposition, instead announcing that the agency
12 had no position on the motion for a stay.  Notice Withdrawing Pl.'s Response,
13 *Nationwide Biweekly* ECF No. 338 at 2.  In *CFPB v. Golden Valley Lending, Inc.*, No.
14 2:17-cv-02521-JAR-JPO (D. Kan. filed Apr. 27, 2017), the CFPB on December 5 moved
15 the court to extend its briefing schedule on a pending motion by over a month, citing the
16 need for "additional time to consult with new leadership" given "recent leadership
17 changes at the Bureau."  *See* Mot. for Modification to Briefing Schedule, *Golden Valley*
18 ECF No. 98 at 1.  Even in this action, the CFPB's counsel seems unable to determine the
19 strategy of the Bureau: after the parties conferred regarding the instant motion, the
20 Bureau's counsel wrote to Freedom's counsel in an email only that "the CFPB will not be
21 joining your motion and will respond once we see the filed papers"—thereby putting off
22 any decision to oppose the filing for at least two more weeks.

23     As it has demonstrated in those recent cases and in its correspondence in this
24 action, the CFPB here needs time under its new leadership to reevaluate its decision to

---

[8] Patrick Rucker & Richard Cowen, *Trump-installed consumer agency head sets hiring freeze, halts new rules*, REUTERS (Nov. 27, 2017, 7:06 a.m.), https://www.reuters.com/article/us-usa-trump-cfpb-memo/trump-installed-consumer-agency-head-sets-hiring-freeze-halts-new-rules-idUSKBN1DR1UD.

bring this suit.  A stay is therefore likewise warranted in this action.

## CONCLUSION

For the reasons stated above, Freedom respectfully requests that the Court stay the proceedings in this case until (1) the court in *English v. Trump* makes a final, non-appealable ruling as to the identity of the Acting Director of the CFPB, and (2) that Acting Director determines it is the intention of the Bureau that this action should continue.

I, Allen Ruby, am the ECF use whose ID and password are being used to file Defendants' Notice of Motion and Motion to Stay Proceedings.  In compliance with Local Rule 5-1(i)(3), I attest that Cristina C. Arguedas has concurred in this filing.

DATED:  December 12, 2017

                SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                By:    */s/ Allen J. Ruby*
                          ALLEN J. RUBY
                      Attorneys for Defendant
                    FREEDOM DEBT RELIEF, LLC

                ARGUEDAS, CASSMAN & HEADLEY LLP

                By:    */s/ Cristina C. Arguedas*
                      CRISTINA C. ARGUEDAS
                      Attorneys for Defendant
                      ANDREW HOUSSER

# CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on December 12, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record for Plaintiffs and constitutes service under L.R. 5-1(h)(1).

*/s/ Allen J. Ruby*
ALLEN J. RUBY
Attorney for Defendant
FREEDOM DEBT RELIEF, LLC