Cristina C. Arguedas (Cal. Bar No. 87787)
    Email: arguedas@achlaw.com
Raphael M. Goldman (Cal. Bar No. 229261)
    Email: goldman@achlaw.com
ARGUEDAS, CASSMAN & HEADLEY, LLP
803 Hearst Avenue
Berkeley, CA 94710
Telephone:   (510) 845-3000
Facsimile:    (510) 845-3003

*Counsel for Andrew Housser*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>            Plaintiff,<br><br>    v.<br><br>FREEDOM DEBT RELIEF, LLC and ANDREW HOUSSER,<br><br>            Defendants. | Case No.: 3:17-cv-6484-EDL<br><br>**DEFENDANT ANDREW HOUSSER'S NOTICE OF MOTION AND MOTION TO DISMISS AND JOINDER IN DEFENDANT FREEDOM DEBT RELIEF'S MOTION TO DISMISS**<br><br>and<br><br>**DEMAND FOR JURY TRIAL**<br><br>Hon. Elizabeth D. Laporte<br>Date: April 17, 2018<br>Time: 9:00 a.m.<br>Courtroom E, 15th Floor |

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

NOTICE OF MOTION AND MOTION TO DIMISS, AND DEMAND FOR JURY TRIAL ............................................................................................................................... iv

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 1

ARGUMENT ....................................................................................................................... 2

I.     LEGAL STANDARD .............................................................................................. 2

II.    THE CFPB FAILS TO STATE A CLAIM AGAINST MR. HOUSSER UNDER 12 U.S.C. §§ 5531 OR 5536 BECAUSE IT FAILS TO STATE A CLAIM AGAINST FREEDOM ............................................................................... 3

III.   THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUSTAIN ITS CLAIM THAT MR. HOUSSER IS PERSONALLY LIABLE FOR FREEDOM'S ALLEGED ACTS ............................................................................... 4

    A.     The Complaint Does Not Plausibly Allege that Mr. Housser Participated Directly in Any Objectionable Activity .................................. 4

    B.     The Complaint Does Not Plausibly Allege Mr. Housser's Scienter .......... 7

CONCLUSION ................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................. 3, 9, 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 2, 3, 9

*CFPB v. Gordon*, 819 F.3d 1179 (9th Cir. 2016) .............................................. 3, 4, 6, 7

*In re San Jose Med. Mgmt., Inc.*, No. C 05-01233 JF, 2006 WL 733476 (N.D. Cal. Mar. 22, 2006) ........................................................................................... 6

*Facciola v. Greenberg Traurig LLC*, No. CV-10-1025-PHX-FJM, 2011 U.S. Dist. LEXIS 61785, 2011 WL 2268950 (D. Ariz. Jun. 9, 2011) ............................................... 9

*FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564 (7th Cir. 1989) ...................................... 3

*FTC v. Garvey*, 383 F.3d 891 (9th Cir. 2004) ....................................................... 8, 10, 11

*FTC v. Gill*, 71 F. Supp. 2d 1030 (C.D. Cal. 1999) ...................................................... 3

*FTC v. Grant Connect, LLC*, 763 F.3d 1094 (9th Cir. 2014) ......................................... 4

*FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176 (C.D. Cal. 2000) ............................. 4, 6, 7

*FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283 (S.D.N.Y. 2008) ................. 8

*FTC v. Medicor LLC*, No. CV011896CBMEX, 2001 WL 765628 (C.D. Cal. June 26, 2001) ............................................................................................... 8, 10, 11

*FTC v. Publishers Bus. Servs., Inc.*, 540 Fed. App'x 555 (9th Cir. 2013) ...................... 7

*FTC v. Stefanchik*, 559 F.3d 924 (9th Cir. 2009) ....................................................... 4

*FTC v. Zamani*, No. SACV 09-0977-DOC(MLGx), 2011 WL 2222065 (C.D. Cal. June 6, 2011) ............................................................................................. 8, 11

*Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112 (9th Cir. 2014) ..................... 10

*Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994) .............................................................. 2

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ............................... 10

*Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011) ............................................................... 3

*Technology in P'ship v. Rudin*, No. 10 Civ. 8076 (RPP), 2011 U.S. Dist. LEXIS 114127, 2011 WL 4575237 (S.D.N.Y Oct. 4, 2011) ....................................................... 9

**Statutes**

6 R.I. Gen. Laws § 19-14.8-19 ................................................................................................7

12 U.S.C. § 5531......................................................................................................... 3, 11

12 U.S.C. § 5536..................................................................................................... 3, 4, 11

Colo. Rev. Stat. § 12-14.5-219 .............................................................................................7

Del. Code Ann. § 2419A.......................................................................................................7

N.D. Cent. Code § 13-11-19 .................................................................................................7

Nev. Rev. Stat. § 676A.540 ..................................................................................................7

Tenn. Code Ann. § 47-18-5419 ............................................................................................7

Utah Code § 13-42-119.........................................................................................................7

## NOTICE OF MOTION AND MOTION TO DIMISS, AND DEMAND FOR JURY TRIAL

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD**:

PLEASE TAKE NOTICE THAT on April 17, 2018, at 9:00 a.m., or on the earliest date available for the Court, at the United States Courthouse located at 450 Golden Gate Avenue, San Francisco, CA 94102, Courtroom E, Fifteenth Floor, Defendant Andrew D. Housser will, and hereby does, move the Court to dismiss all claims in the operative complaint in this matter (ECF No. 1, the "Complaint" or "Compl.") filed by Plaintiff, the Consumer Financial Protection Bureau (the "CFPB" or the "Bureau").  This motion is based on the below memorandum of points and authorities, the files and records in this case, and any evidence or argument that may be presented at a hearing on this matter.

Dismissal is appropriate for the following reasons, as set forth in the attached memorandum of points and authorities:

- Defendant Freedom Debt Relief, LLC's ("Freedom's" or the "Company's") motion to dismiss, filed contemporaneously herewith, demonstrates that each of the four counts of the Complaint fails to state a claim against Freedom upon which the Court may grant relief.  Mr. Housser also joins and adopts each of those arguments in full.
- For the reasons discussed below, each of the four counts in the Complaint also fails to state a claim upon which the Court may grant relief against Mr. Housser personally.
- Freedom's motion demonstrates that the Consumer Financial Protection Act ("CFPA"), which established the CFPB, is unconstitutional; and that the constitutional defect cannot be remedied by severance of the CFPA's unconstitutional elements.  Mr. Housser joins and adopts Freedom's arguments in full.
- Mr. Housser hereby demands a jury trial.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT ANDREW HOUSSER'S MOTION TO DISMISS

### INTRODUCTION

The CFPB seeks to hold Freedom liable, largely based upon statements in its Debt Resolution Agreements ("DRAs") and other client-facing materials that—pursuant to constrained readings and selective presentation of the facts—the Bureau contends are deceptive and abusive under the CFPA. For the reasons explained in Freedom's Motion to Dismiss, the Complaint fails to plausibly state its claims, and Mr. Housser incorporates by reference the arguments in that brief in their entirety.

In addition, the CFPB tacks onto its four claims against Freedom the additional assertion that Mr. Housser is liable for the same conduct, both directly and as a person who provided "substantial assistance" to Freedom in its alleged acts. The Complaint offers scant allegations that relate to Mr. Housser under either of these theories. Of the few allegations it does provide, most are either recitals of Mr. Housser's general job responsibilities or conclusory statements, unsupported by factual averments, to the effect that Mr. Housser "knew" various aspects of Freedom's supposed wrongdoing. These generalities cannot sustain the CFPB's contentions. The Court should dismiss the Complaint's claims against Mr. Housser because (1) the Bureau has not alleged an actionable predicate case against Freedom, and (2) the Bureau has also failed to plead the elements of a case for either direct or "substantial assistance" liability against Mr. Housser.

### FACTUAL BACKGROUND

As Freedom explains in its Motion to Dismiss, the Company is the nation's leading provider of debt settlement services, having settled more than $8 billion in unsecured debt obligations for more than 480,000 clients in financial distress since 2002. Freedom's clients make a monthly payment into a dedicated "Settlement Account." (Compl. ¶ 9.) When the amount in a client's Settlement Account is large enough to sustain a good-faith offer of settlement, Freedom negotiates with the client's unsecured creditors, like credit card companies, to reach settlements of the client's

1  debts, relieving the client of his or her financial burdens at a discount.  (*Id.*)

2    Mr. Housser is Freedom's co-founder and co-CEO.  (Compl. ¶ 7.)  The Complaint
3  asserts that this office tasks Mr. Housser with broad duties and responsibilities over
4  most of Freedom's operations.  (*See* Compl. ¶¶ 36-37.)  As alleged, among those broad
5  duties are the approval of Freedom's overall negotiation practices and procedures
6  (Compl. ¶¶ 41, 47, 55, 67) and the review and approval of Freedom's DRAs and other
7  operational documents (Compl. ¶¶ 47-48, 55-56, 67-68, 79).  The Complaint offers only
8  two more specific instances of Mr. Housser's conduct germane to this action: (1) it
9  alleges that Mr. Housser "on occasion" joined a "creditor development team" in meeting
10 with creditors to discuss the creditors' policies towards Freedom, and received regular
11 briefings from the team on its work (Compl. ¶ 19); and (2) it alleges that Mr. Housser's
12 "name and signature appear on all [DRAs]" (Compl. ¶¶ 38, 49, 57, 69, 79).

13 **ARGUMENT**

14   For each of the four counts in the Complaint alleging that Freedom engaged in
15 deceptive and abusive practices under the CFPA, the CFPB tacks on repetitious and
16 unsupported statements claiming that Mr. Housser is also personally liable under each
17 theory.  The Court should dismiss these ride-along allegations.  The allegations fail
18 because (1) the Bureau's underlying claims against Freedom fail, and (2) the Bureau's
19 claims about Mr. Housser's personal liability are conclusory propositions that rest on
20 insufficient allegations of specific facts concerning Mr. Housser.

21 **I.  LEGAL STANDARD**

22   The Court must for the purposes of this motion accept all of the Complaint's
23 allegations of material fact as true, and must construe all inferences in the light most
24 favorable to the CFPB.  *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994).  However,
25 the Complaint cannot survive unless it alleges facts sufficient "to state a claim to relief
26 that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).
27 Accordingly, the Complaint must (1) "contain sufficient allegations of underlying facts to
28 give fair notice and to enable the opposing party to defend itself effectively" and

1  (2) "plausibly suggest an entitlement to relief." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Mere conclusory statements cannot sustain a complaint; thus, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (quotation marks omitted).

## II. THE CFPB FAILS TO STATE A CLAIM AGAINST MR. HOUSSER UNDER 12 U.S.C. §§ 5531 OR 5536 BECAUSE IT FAILS TO STATE A CLAIM AGAINST FREEDOM

An individual may not be found liable under the CFPA for the acts of a business entity unless the entity itself is found liable for those acts. *See FTC v. Gill*, 71 F. Supp. 2d 1030, 1046 (C.D. Cal. 1999) (noting that courts proceed to director liability analysis "once the FTC has established corporate liability"); *see also FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989) ("Once corporate liability is established, the FTC must show that the individual defendants participated directly in the practices or acts or had authority to control them.").[1] Here, for the reasons explained in Freedom's motion to dismiss, the Complaint fails to state an actionable claim against the Company under any of its four counts. Not only can Mr. Housser not have derivative liability for "substantial assistance" of unactionable predicate acts under 12 U.S.C. § 5536(a)(3), but the Complaint alleges no facts separate from its assertions about the Company's acts upon which it could credibly claim that Mr. Housser independently violated Section 5531 or Section 5536(a)(1). Mr. Housser joins Freedom's motion and respectfully submits that, for the reasons stated therein, the CFPB has failed to state a claim against him personally.

---

[1] As Freedom observes in footnote 2 of its Motion to Dismiss, courts frequently consult FTC precedent in their analysis of parallel provisions of the CFPA. *See also, e.g., CFPB v. Gordon*, 819 F.3d 1179, 1192-93 & n.7 (9th Cir. 2016).

### III. THE COMPLAINT FAILS TO ALLEGE SUFFICIENT FACTS TO SUSTAIN ITS CLAIM THAT MR. HOUSSER IS PERSONALLY LIABLE FOR FREEDOM'S ALLEGED ACTS

Even if the Court were to find that the Bureau had adequately pleaded some of its claims against Freedom, the Court would nonetheless be required to dismiss the CFPB's claims against Mr. Housser because the Complaint does not allege facts sufficient to plausibly assert a claim that Mr. Housser provided Freedom "substantial assistance" in violating the CFPA. 12 U.S.C. § 5536(a)(3).

Under the CFPA, a finding of personal liability for substantial assistance requires allegations that the individual "'(1) . . . participated directly in the deceptive acts or had the authority to control them and (2) . . . had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth.'" *CFPB v. Gordon*, 819 F.3d 1179, 1193 & n.8 (9th Cir. 2016) (quoting *FTC v. Stefanchik*, 559 F.3d 924, 928 (9th Cir. 2009)).  The burden to prove a claim for an individual's substantial assistance of a CFPA violation is thus higher than the burden to prove the underlying violation itself, because a substantial assistance claim requires a showing of scienter.  Yet the Bureau's Complaint is devoid of factual allegations that adequately establish *either* of the necessary elements.

#### A. The Complaint Does Not Plausibly Allege that Mr. Housser Participated Directly in Any Objectionable Activity

The Complaint fails to allege facts sufficient to plausibly establish that Mr. Housser "participated directly in the deceptive acts or had the authority to control them." *Gordon*, 819 F.3d at 1193.  Such participation and authority must be established by the allegation of specific facts, not by mere citation to the individual's role as an officer of the entity.  *See, e.g.*, *FTC v. J.K. Publ'ns, Inc.*, 99 F. Supp. 2d 1176, 1208 (C.D. Cal. 2000) (rejecting the FTC's theory that individual's "role as an officer or director *on paper*, without more, sufficiently shows authority to control" (emphasis in original)); *see also FTC v. Grant Connect, LLC*, 763 F.3d 1094, 1104 (9th Cir. 2014) (vacating

summary judgment where "the evidence does not show that [the manager of the offending entity] controlled [the entity] at the time . . . nor does it show that he directly participated in the scheme").

Critically, the CFPB has not alleged facts that go beyond Mr. Housser's role as co-CEO of Freedom. The Bureau raises allegations against Mr. Housser under each of its counts alleging Freedom's misconduct, but these allegations all amount to repetitions of the same three points ostensibly reflecting his control over Freedom's actions:

- The Bureau alleges that Mr. Housser was periodically briefed by and "on occasion" joined a "creditor development team" that would meet with creditors to discuss their alleged policies with respect to Freedom. (Compl. ¶ 19.)
- The Bureau alleges that Mr. Housser, as co-CEO of the Company, possessed a general "authority and responsibility" for Freedom's operations, including the approval of its "policies and practices" and "the content of the Debt Resolution Agreements." (Compl. ¶¶ 36-37, 41, 47-48, 55-56, 67-68, 79.)
- The Bureau alleges that Mr. Housser's "name and signature appear on all" DRAs. (Compl. ¶¶ 38, 49, 57, 69, 79.)

None of these allegations, even if taken as true, is sufficient to establish Mr. Housser's personal liability.

The allegation that Freedom "maintained a team dedicated to meeting with creditors that have frequently refused to negotiate with Freedom to persuade them to change their policies" (Compl. ¶ 19) does nothing to further the Bureau's claims that either Freedom or Mr. Housser engaged in deceptive or abusive practices. At most, this averment suggests that Freedom worked to develop its relationship with creditors who were "frequently" uncooperative—a claim that both fails to indicate any deceptive or abusive conduct and also implies that, in at least some instances, those creditors would negotiate with Freedom after all. Moreover, the allegation fails to establish that Mr. Housser had control or participation in any deceptive acts. There is no allegation that Mr. Housser did anything more than "occasion[ally]" join the operations of this "creditor

development team"; the Complaint does not and cannot allege that the operations of the team were themselves unlawful, and in any event does not allege that Mr. Housser directed the team or advised it to make misstatements, whether knowing, reckless or otherwise.  Nor does the Complaint allege that the creditor development team discussed during any meeting attended by Mr. Housser any of the particular creditors that the CFPB asserts observed a policy against negotiating with debt settlement companies during the relevant timeframe.  In short, this allegation fails to support a claim that Mr. Housser "participated directly" in any unlawful act or "had the authority to control" such an act.  *See Gordon*, 819 F.3d at 1193.

The allegations related to Mr. Housser's role as co-CEO of Freedom amount to nothing more than general descriptions of the job duties of such an officer: the role is necessarily "significant[ly]" responsible (Compl. ¶ 47) for the Company's policies, practices, and core operational documents, to say nothing of numerous other operational responsibilities entrusted to it daily.  But these are not specific indications of Mr. Housser's involvement in any of the supposed misconduct alleged in the Complaint—rather, they are just artfully pleaded recitations of Mr. Housser's "role as an officer . . . *on paper*," which courts have rejected as a basis for personal liability under similar, relevant statutory provisions.  *See, e.g, J.K. Publ'ns*, 99 F. Supp. 2d at 1208.

The last recurring allegation offers no greater factual basis for a finding of personal participation or control.  The printing of Mr. Housser's signature across each Freedom client's DRA does nothing to show that Mr. Housser individually reviewed each such DRA or actively participated in crafting the specific allegedly objectionable terms therein.  In this regard, Mr. Housser's signature is no different than that of any other corporate officer on any corporation's documents; such signatures are provided in the officer's official capacity, not his or her personal capacity.  *See, e.g.*, *In re San Jose Med. Mgmt., Inc.*, No. C 05-01233 JF, 2006 WL 733476 at *2 (N.D. Cal. Mar. 22, 2006) (holding that executive "signed the agreement as a corporate officer . . . and not in his individual capacity" where "the agreement's signature line specifically asked for the

'Authorized Person's Signature,' and below the signature line the agreement asked that [the executive] print his name and title, which he did"). Indeed, under the Uniform Debt-Management Services Act, the signature of an officer or manager of Freedom was required on each DRA. *See, e.g.*, Nev. Rev. Stat. § 676A.540(1)(b).[2] In short, the presence of Mr. Housser's signature on Freedom's DRAs indicates little more than that he is an officer of the Company—not that he had a hand in the specific conduct to which the CFPB objects. Such generalities fail to meet the need for specific allegations of fact supporting the assertion that Mr. Housser "participated directly" in deceptive or abusive conduct, and therefore once again cannot sustain a finding of personal liability. *See J.K. Publ'ns*, 99 F. Supp. 2d at 1208. Because the Bureau offers no further allegations germane to this necessary element, the Court must dismiss all of its counts against Mr. Housser.

### B. The Complaint Does Not Plausibly Allege Mr. Housser's Scienter

The Complaint also fails credibly to allege that Mr. Housser "had knowledge of the misrepresentations, was recklessly indifferent to the truth or falsity of the misrepresentation, or was aware of a high probability of fraud along with an intentional avoidance of the truth." *Gordon*, 819 F.3d at 1193. As with the first element, mere reference to an officer's corporate title is insufficient to establish scienter; the CFPB must instead allege specific facts indicating the individual's actual knowledge or recklessness about the wrongfulness of the conduct at issue. *See FTC v. Publishers Bus. Servs., Inc.*, 540 Fed. App'x 555, 558 (9th Cir. 2013) (unpublished) (holding that because "the FTC did not present any evidence beyond [an officer's] corporate titles as to her knowledge . . . it was not an abuse of discretion to hold that she was not

---

[2] Nevada has adopted the Uniform Debt-Management Services Act without change, and the section of that model act requiring an officer or manager's signature on the Company's DRAs has been adopted identically across several other jurisdictions in which Freedom also conducts business. *See, e.g.*, Colo. Rev. Stat. § 12-14.5-219(a)(2); Del. Code Ann. § 2419A(a)(2); 6 R.I. Gen. Laws § 19-14.8-19(a)(2); N.D. Cent. Code § 13-11-19(1); Utah Code § 13-42-119(a)(2); Tenn. Code Ann. § 47-18-5419(a)(2).

individually liable"). Moreover, an individual cannot be held liable for a representation, however allegedly false, where that individual had a good faith or otherwise justified belief in its truth. *See, e.g.*, *FTC v. Garvey*, 383 F.3d 891, 901-02 (9th Cir. 2004) (holding that the FTC had failed to show liability where an individual "had first-hand anecdotal evidence" and "information that purported to present scientific bases for his claims"); *FTC v. Medical Billers Network, Inc.*, 543 F. Supp. 2d 283, 320 (S.D.N.Y. 2008) ("Because of the knowledge requirement for individual liability, a defendant's good-faith belief in the truth of a representation . . . may be relevant to whether that defendant can be held individually liable for these misrepresentations."); *FTC v. Medicor LLC*, No. CV011896CBMEX, 2001 WL 765628 at *3 (C.D. Cal. June 26, 2001) ("[G]ood faith is relevant to determine . . . whether to hold Defendants individually liable . . . ."). Accordingly, there can be no personal liability where the CFPB "provide[s] no reason . . . that [an individual defendant] should have known in advance" of the wrongfulness of his alleged conduct. *FTC v. Zamani*, No. SACV 09-0977-DOC(MLGx), 2011 WL 2222065 at *14 (C.D. Cal. June 6, 2011).

The CFPB makes four allegations directed towards Mr. Housser's state of mind[3]:

- "On occasion, Housser accompanied th[e] 'creditor development team' on its meetings. And for years, Housser has been briefed every two weeks and has met frequently with the 'creditor development team' to learn about its efforts to persuade creditors to negotiate with Freedom." (Compl. ¶ 19.)
- "Housser knew that the statement included in all [DRAs] that creditors would work with Freedom to negotiate settlements was not always true with respect to certain creditors." (Compl. ¶ 39.)

---

[3] While the CFPA proffers three bases for the requisite scienter—actual knowledge, recklessness, and awareness of the possibility of fraud coupled with active avoidance—the CFPB's Complaint bases all four of its counts against Mr. Housser on actual knowledge. With respect to Count IV, the CFPB asserts that Mr. Housser "consciously avoided knowing that Freedom failed" to abide by the Telemarking Sales Rule but does not allege facts regarding an awareness of a high probability of fraud.

- "Housser knew that the statement included in all [DRAs] that consumers would only be charged if Freedom negotiated a settlement and consumers made payments toward those settlements was not true." (Compl. ¶ 40.)
- "Housser knew or consciously avoided knowing that Freedom failed to clearly and conspicuously disclose that consumers must receive all funds in the [settlement] account other than fees earned by Freedom upon withdrawal . . . ." (Compl. ¶ 80.)

Again, none of these allegations suffices to make out a case of personal liability.

As an initial matter, the CFPB nowhere alleges that Mr. Housser's "occasion[al]" meetings with the "creditor development team" produced any knowledge sufficient to sustain scienter under the CFPA. Tellingly, the Bureau does not point to a single instance in which Mr. Housser learned any fact that revealed Freedom's statements about creditors to be inaccurate. The bare allegation of Mr. Housser's periodic discussions with the "creditor development team" cannot support the CFPB's claim of knowledge or recklessness.

The balance of the allegations, which relate to Mr. Housser's supposed state of mind, are just as conclusory—and similarly insufficient. The Supreme Court has directed that a complaint must include more than legal conclusions couched as factual ones, and that formulaic recitations of the elements of a claim are insufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Yet that is all the CFBP has provided: pseronal liability under the CFPA requires a showing of scienter, and the Complaint simply contends, without further specificity, that Mr. Housser had the requisite scienter. (*See* Compl. ¶¶ 39, 40, 80.) Such bald allegations are insufficient to defeat a motion to dismiss. *See, e.g., Technology in P'ship v. Rudin*, No. 10 Civ. 8076 (RPP), 2011 U.S. Dist. LEXIS 114127 at *17, 2011 WL 4575237 (S.D.N.Y Oct. 4, 2011) (holding that accusations of factual errors "coupled with bald conclusory allegations of knowledge and concealment do not meet the plausibility standard in *Iqbal*"); *Facciola v. Greenberg Traurig LLC*, No. CV-10-1025-PHX-FJM, 2011 U.S. Dist. LEXIS 61785 at *36, 2011 WL

2268950 (D. Ariz. Jun. 9, 2011) (finding insufficient under *Iqbal* the plaintiffs' "conclusory allegations" of knowledge).  The Court may not accept the plausibility of the Bureau's conclusory statements, of scienter or any other element, without more.  *See Iqbal*, 556 U.S. at 678.

Furthermore, even if the above-discussed assertions were more than conclusory, they still would not establish the necessary scienter under the CFPA.  The allegation at paragraph 39 of the Complaint—that Mr. Housser "knew that the statement included in all [DRAs] that creditors would work with Freedom to negotiate settlements was not always true with respect to certain creditors"—fails to establish knowing falsity.  The statement to which the allegation refers, as it appears in the DRA, reads, "We believe that each Creditor listed on Exhibit A will work with us to negotiate a settlement of your Debts."  Declaration of Allen Ruby (Dkt. No. 33-1) § 2 & Ex. A at 2.  Even assuming that Mr. Housser somehow "knew" the proposition "that creditors would work with Freedom to negotiate settlements" to be "*not always* true with respect to certain creditors" (Compl. ¶ 39 (emphasis added)), such knowledge did not preclude Freedom or Mr. Housser from the "belie[f]" that cooperating creditors were still the norm.  The CFPB's allegation that Mr. Housser knew that "*certain* creditors" would "*not always*" work with Freedom (*id.*) concedes that he understood that *all* creditors would at least *sometimes* do so, and that some creditors would *always* do so, which is a good-faith basis for the stated belief and, therefore, enough to vitiate the Bureau's allegation of scienter.  *See Garvey*, 383 F.3d at 901-02; *Medicor*, 2001 WL 765628 at *3.

As to the next assertion, at paragraph 40 of the Complaint, Freedom illustrates in its motion to dismiss that a reasonable reading of the DRA provisions to which it refers does not bear the hair-splitting reading to which the Bureau wishes to subject them.[4]

---

[4] Although in general the Court must treat the Complaint's factual averments as true, it need not accept allegations that are contradicted by "matters properly subject to judicial notice or by exhibit."  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

1  Moreover, the Bureau posits no reason at all to suggest that *Mr. Housser* did not
2  understand that Freedom's policy, more precisely articulated, was to "not charge or
3  collect any fee for [its] settlement services unless and until a Debt [wa]s successfully
4  resolved"—which is exactly what the DRA provides. Dkt. 33-1, Ex. A (DRA) at 3, § 5.
5  The Bureau's failure to allege that Mr. Housser had anything but a good-faith
6  understanding of this undisputedly true statement precludes any plausible inference of
7  the requisite scienter.  *See Garvey*, 383 F.3d at 901-02; *Medicor*, 2001 WL 765628 at
8  *3.

9  Finally, the allegation at paragraph 80 of the Complaint is demonstrably untrue,
10 given the Account Agreement's inclusion of the exact language that the Bureau
11 suggests was omitted.  *See* Dkt. 33-1, Ex. A (DRA) at 12.  To the extent the Bureau
12 now alleges that this inclusion was somehow not "clear[ ] and conspicuous[ ]" (Compl. ¶
13 80), Mr. Housser could not reasonably have known at the time the DRA was drafted that
14 Freedom's inclusion of the precise language contemplated by regulation in the DRA
15 packet, set off in underlined text, was insufficient to meet the regulation's standard.  The
16 CFPB has thus "provided no reason . . . that [Mr. Housser knew or] should have known
17 in advance" of the supposed violation, and it, therefore, has failed to allege scienter.
18 *See Zamani*, 2011 WL 2222065 at *14.  In light of the fact that the CFPB has not
19 alleged any violation of the regulation it cites, its claim that Mr. Housser "assit[ed] and
20 facilitate[ed]" such a violation (Compl. ¶ 81) similarly fails.

21 In sum, the CFPB has failed to plausibly allege either Mr. Housser's participation
22 in activity prohibited under the CFPA or his knowledge with respect to any such
23 activity's wrongfulness.  Because this vitiates the CFPB's theory that he provided
24 "substantial assistance" to Freedom's alleged violations of the law and because the
25 Bureau offers no allegation at all sufficient to plausibly state a claim that Mr. Housser
26 committed any act independent of the Company's that might justify liability under
27 Section 5531 or Section 5536(a)(1), the Court should dismiss each of the Complaint's
28 counts against Mr. Housser.

## **CONCLUSION**

For the reasons discussed above, the Court should dismiss the CFPB's Complaint in full for its failure to state an actionable claim against Mr. Housser.[5]

Mr. Housser hereby demands a jury trial.

Dated: February 5, 2018              Respectfully submitted,

                                                       /s/
                                       Cristina C. Arguedas
                                       ARGUEDAS, CASSMAN & HEADLEY, LLP

                                       Counsel for Andrew Housser

---

[5] Although the claims against Freedom should also be dismissed as set forth in the Company's Motion to Dismiss, the Court may dismiss the claims against Mr. Housser even if it allows the claims against Freedom to proceed.  *See, e.g.*, *FTC v. Swish Mktg.*, No. C 09-03814 RS, 2010 WL 653486 at *5-6 (N.D. Cal. Feb. 22, 2010).

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on February 5, 2018, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to counsel of record for Plaintiffs and constitutes service under L.R. 5-1(h)(1).

Dated: February 5, 2018	Respectfully submitted,

	/s/
	Cristina C. Arguedas
	ARGUEDAS, CASSMAN & HEADLEY, LLP

	Counsel for Andrew Housser